UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

LLOYD HUGHES, JR., *for himself and*
*all other similarly situated individuals*,

    Plaintiff,

v.   Civil Action No. _____

EARLY WARNING SERVICES, LLC,

    Defendant.

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **LLOYD HUGHES, JR.**, for himself and all other similarly situated individuals, by Counsel, and as for her Second Amended Complaint against Defendant **EARLY WARNING SERVICES, LLC**, states as follows:

### PRELIMINARY STATEMENT

1. This is an action for statutory, actual, and punitive damages, costs, and attorney fees for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

2. Defendant is a consumer reporting agency ("CRA") governed by the FCRA. As such, it is bound by many statutorily demanded requirements, the most-fundamental of which include having in place reasonable procedures to assure the maximum-possible-accuracy of information it reports, and that it investigate consumer disputes of inaccurate information. 15 U.S.C. §§ 1681e(b), 1681i.

3. Defendant collects information about consumers from "thousands of financial institutions (FIs) across the United States." It then "provides information to participating FIs about

consumers' banking activity and history to help them detect fraud and assess risk." https://www.earlywarning.com/consumer-information, last visited Jan. 23, 2024.

4. This information bears on consumers' character, general reputation, personal characteristics, credit standing, and mode of living, among other things, and is sold to determine consumers' eligibility for banking services.

5. After acquiring consumer information from its sources, Defendant regularly assembles that information into a report, which it then sells to third parties. Defendant sells such consumer reports to customers throughout the country, using facilities of interstate commerce to transmit such reports, including but not limited to electronic transmission.

6. Plaintiff was a victim of an inaccurate consumer report sold by Defendant to JP Morgan Chase. In that report, Defendant indicated that Plaintiff's account with Bank of America was associated with fraud.

7. This notation was inaccurate, as no fraud has ever occurred on Plaintiff's Bank of America account.

8. Plaintiff was unable to open an account with JP Morgan Chase because of Defendant's inaccurate reporting of his Bank of America account.

9. Plaintiff disputed the inaccurate reporting to Defendant, to no avail. The inaccurate reporting remains.

10. Plaintiff brings a nationwide class claim against Defendant under Section 1681i of the FCRA, as Defendant does not investigate any disputes by consumers. Instead, Defendant sends consumers a form letter that essentially instructs consumers to contact the furnisher of the information (here, Bank of America) and take their dispute to the furnisher.

11. Such a response is inappropriate under Section 1681i, as that section requires CRAs to conduct a reasonable investigation of consumer disputes. 15 U.S.C. § 1681i. No investigation at all, which Defendant does as a matter of course, does not comply with Section 1681i.

12. Plaintiff also brings an individual claim against Defendant under Section 1681e(b) of the FCRA, as Defendant does not have reasonable procedures to ensure the maximum possible accuracy of the information it reports.

13. As to Plaintiff, Defendant inaccurately attached a fraud notation to Plaintiff's Bank of America account, and continued that inaccurate reporting even after Plaintiff disputed.

## JURISDICTION AND VENUE

14. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

15. Venue is proper in this District as Plaintiff is a resident in this District and Division, the violations described in this Complaint occurred in this District and Division, and the Defendant transacts business within this District and Division.

## PARTIES

16. The Plaintiff is a natural person residing in Williamsburg, Virginia and at all times relevant to the Complaint was a "consumer" as defined by 15 U.S.C. § 1681a(c).

17. Defendant is foreign corporation authorized to do business in Virginia through its registered office in Henrico County, Virginia.

18. Defendant is "a consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

## FACTUAL ALLEGATIONS

### *The Fair Credit Reporting Act's Accuracy Requirement is Rigorous*

19. "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress adopted a variety of measures designed to insure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001).

20. "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

21. One of these measures, 15 U.S.C. § 1681e(b), "deal[s] with the procedures consumer reporting agencies must follow when collecting and transmitting information. Congress also gave individuals the right to sue reporting agencies for violations of FCRA. *Id.* § 1681e(b) sets forth the CRAs' overall duly:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

*Defendant's Business*

22. Defendant markets itself to banks as a means to help them screen account applicants so the banks are able "to open new accounts, get in front of fraud, and move to faster payments." https://www.earlywarning.com/about, last visited Jan. 23, 2024.

23. It touts that it "has been empowering and protecting consumers, small businesses, and the U.S. financial system with cutting-edge fraud and payment solutions for more than three decades. *Id.*

24. Defendant has operated for decades, and as a CRA for at least the time pertinent to this lawsuit.

25. Its website contains several blog entries describing how it can help banks detect and stop fraud, trends in banking fraud, and how to validate accounts in real time, among several others. https://www.earlywarning.com/blog.

26. As the FCRA sets forth, a consumer reporting agency is:

> [A]ny ***person***[1] which, ***for monetary fees***, dues, or on a cooperative nonprofit basis, ***regularly engages*** in whole or in part ***in the practice of assembling*** or evaluating consumer credit information or ***other information on consumers for the purpose of furnishing consumer reports to third parties***, and which uses any means or facility ***of interstate commerce for the purpose of preparing*** or furnishing consumer reports.

15 U.S.C. § 1681a(f) (emphasis added).

27. As demonstrated above, Defendant operates as a CRA because (1) in exchange for compensation; (2) Defendant regularly assembles information on consumers; (3) for the purpose of furnishing consumer reports; and (4) by means of interstate commerce.

---

[1] "Person" is defined as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).

5

28. Because it compiles information about consumers that bear on credit- and living-related characteristics and sells that information for purposes of determining consumers' eligibility for banking, Defendant is a CRA and therefore governed by the FCRA.

29. It is therefore required to comply with the FCRA's many demands on CRAs.

### *LexisNexis Reports Plaintiff as Having Committed Fraud*

30. In late 2022, Plaintiff attempted to open a bank account with JP Morgan Chase, where he is employed as a Private Client Banker.

31. Using its standard practice, Chase obtained a report about Plaintiff from Defendant.

32. Defendant's report contained the following entries about one of Plaintiff's accounts with Bank of America:

```
Bank Routing #:      47         Account #:                  7432        Account Type: Joint signer
Incident Date: 06/21/2021
Principal Loss:                 Fee Reversal:               Combined Loss & Fee Reversal:
Paid/UnPaid/Settled: Unpaid
Contribution Reason: Checking Account Fraud
```

33. Chase declined to permit Plaintiff to open an account, because of the information Defendant provided Chase about the Bank of America account.

34. The information inserted above is inaccurate. Plaintiff's account is not "unpaid"—he owes Bank of America nothing relating to this account.

35. Plaintiff also did not commit any form of "fraud" relating to or in his use of the account.

36. Bank of America did not pay out any funds improperly or as a result of any supposed fraud on or using the account.

37. These entries by Defendant on a report about Plaintiff were inaccurate, and caused Plaintiff to lose out on being able to bank at the bank at which he is employed.

38. In September of 2023, Plaintiff disputed the inaccurate reporting with Defendant.

39. In his dispute letter, Plaintiff explained:

> After review of my consumer report, I send this letter to formally dispute the following accounts that appear on my consumer report as follows:
>
> - BANK OF AMERICA #*********[redacted]7432 – You are incorrectly reporting this account as an unpaid fraud account. I do not owe money to Bank of America. Bank of America did not pay out funds based on a fraudulent check.

40. This letter triggered Defendant's duty to investigate Plaintiff's dispute under Section 1681i of the FCRA.

41. Instead of actually investigating, Defendant did nothing with Plaintiff's disputes.

42. This is confirmed by two letters Defendant sent to Plaintiff, both dated October 28, 2023. The first reads, in part:

> This will respond to your correspondence received October 03, 2023.
>
> Early Warning does not have access to account documentation and is therefore unable to provide copies of any documents. For more information, please contact the furnisher directly. The contact information is:
>
> Bank of America
> PO Box 44145
> Jacksonville, FL 32231
> 877-240-6886

43. In other words, Defendant did nothing to contact Bank of America to obtain account documentation to investigate Plaintiff's dispute.

44. Instead, Defendant expects to push its information-gathering and investigation burden onto consumers, and make it their problem to contact furnishers of information and obtain what Defendant should seek so that it may properly discharge its statutory obligations.

45. This statement is also plainly inaccurate, as Defendant has data reflecting three years' worth of transactions on the subject account. It has plenty of "account documentation" or,

if it did not have what it needed to properly investigate Plaintiff's dispute, Defendant knows how to get that information.

46. The second letter Defendant sent to Plaintiff reads, in part:

> We are in receipt of your dispute of the information contained in your file and the reinvestigation of the accuracy of the reported information has been completed. The reinvestigation confirms that the information contained in your file is accurate and complete as of the date it was furnished to our database.

47. Again, in other words, Defendant did not do anything to independently investigate the accuracy or completeness of the information Bank of America provided Defendant and Plaintiff was disputing as inaccurate.

48. Defendant either checked just its computerized records to confirm what it was already told was wrong, or simply relied on whatever Bank of America told Defendant about the account.

49. Either way, Defendant did not conduct any separate investigation into Plaintiff's disputes as the FCRA requires of CRAs when such a dispute arrives. 15 U.S.C. § 1681i.

50. After Defendant failed to investigate Plaintiff's dispute and correct the inaccurate reporting, Plaintiff again sought to open an account with Chase. He was again denied, for the same reason.

## CLASS ACTION ALLEGATIONS

51. Plaintiff repeats the allegations in the foregoing paragraphs as though fully set forth herein.

52. **The Investigation Class**. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of a class of which he is a member and initially defined as:

> All natural persons for whom (a) Early Warning issued a consumer report to a third party; (b) who disputed the accuracy or completeness of information contained in an Early Warning Report; (c) to whom Early Warning sent one or both of the letters

8

Early Warning sent to Plaintiff; (d) within five years of the filing of this lawsuit until such time as the class list is prepared.

Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

53. **Numerosity**. Plaintiff alleges that the Investigation Class is so numerous that joinder of the claims of all class members is impractical. Defendant operates as one of the largest CRAs in the nation, and in Virginia alone it certainly has sold tens if not hundreds of thousands of consumer reports during the class period. Given the number of reports Defendant issues and the likely number of disputes it receives, the class size will easily exceed hundreds or thousands of consumers. The names and addresses of the class members are identifiable through documents maintained by Defendant, and the class members may be notified of the pendency of this action by publication or mailed notice.

54. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all putative class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendant actually engages in any activity that can be labeled an "investigation" of a dispute of inaccuracy or incompleteness; (b) whether Defendant's conduct constituted a violation of the FCRA; and (c) whether the violation was negligent, reckless, knowing, or intentionally committed in conscious disregard of the rights of the Plaintiff and putative class members.

55. **Typicality**. Plaintiff's claims are typical of the claims of each putative class member and all are based on the same facts and legal theories. Plaintiff, as every putative class member, alleges a violation of the same FCRA provision, 15 U.S.C. § 1681i. This claim challenges the investigation procedures of Defendant and does not depend on any individualized facts. For

purposes of class certification, Plaintiff seeks only statutory and punitive damages. The recovery of class statutory and punitive damages is ideal and appropriate in circumstances like this one, where injuries are particularized and concrete, but difficult to quantify. In addition, Plaintiff is entitled to the relief under the same causes of action as the other members of the class.

56. **Adequacy**. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor his counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of his responsibilities to the putative class and has accepted those responsibilities.

57. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

   a. As alleged above, the questions of law or fact common to the members of the class predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual issues. Given the complex and extensive litigation necessitated by Defendant's conduct, using individual prosecution to obtain the statutory and punitive damages sought by each member would prove burdensome and expensive. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

   b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many consumers who are otherwise disempowered and

unable to afford to bring their claims individually. Further, most consumers affected by Defendant's conduct described above are likely unaware of their rights under the law or of whom they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law for every similarly situated consumer.

## CLAIMS FOR RELIEF

### COUNT ONE: VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i, Class Claim

58. Plaintiff repeats the allegations in the foregoing paragraphs as though fully set forth herein.

59. Plaintiff informed Defendant through his dispute that it was inaccurately reporting that there was fraud associated with his Bank of America account.

60. Although the FCRA required Defendant to take steps to investigate Plaintiff's dispute, Defendant either simply sent Plaintiff form letters attempting to pass the problem onto him, or did not conduct any investigation at all and simply parroted what Bank of America told it.

61. Either way Defendant willfully violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's consumer file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation and by failing to maintain reasonable procedures with which to filter and delete the inaccurate reporting in Plaintiff's consumer file.

62. As a result of Defendant's conduct and violations of Section 1681i, Plaintiff may recover statutory damages, punitive damages, and attorneys' fees and costs. 15 U.S.C. § 1681n.

### COUNT TWO: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b), Individual Claim

63. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiff. Despite Defendant knowing or at least having reason to know there was no fraud associated with Plaintiff's Bank of America account, Defendant published their consumer reports to end users indicating they were deceased.

64. Defendant's violations of 15 U.S.C. § 1681e(b) were willful, rendering it liable pursuant to 15 U.S.C. § 1681n. In the alternative, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

65. Based on these violations, Plaintiff is entitled to recover his actual damages, punitive damages, costs, and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks for judgment against Defendant; for class certification as pleaded; for statutory and punitive damages for himself and each member of the Classes described above; for actual or statutory and punitive damages for his individual claim; for equitable and injunctive relief; and for attorneys' fees and costs and such other specific or general relief the Court finds just and appropriate.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**LLOYD HUGHES, JR.**

By:    */s/ Leonard A. Bennett*
Leonard A. Bennett, Esq., VSB #37523
Craig C. Marchiando, Esq., VSB #89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA  23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email:  lenbennett@clalegal.com
Email:  craig@clalegal.com

*Counsel for Plaintiff*